T.C. Summary Opinion 2015-3

UNITED STATES TAX COURT

SHALOM JACOBS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21078-11S.                    Filed January 20, 2015.

Shalom Jacobs, pro se.

<u>Christina L. Cook</u> and <u>John Schmittdiel</u>, for respondent.

SUMMARY OPINION

HOLMES, <u>Judge</u>:  Shalom Jacobs was a truck driver in 2007 and 2009.  He

had some taxable income in both years that he admits he did not report.  He

claims, however, that for 2009 he is entitled to deductions for depreciation and

travel expenses that would offset most of his income for that year.  The

Commissioner agrees that Jacobs was entitled to a depreciation deduction--just not

for 2009--but refused to allow him any deductions for travel expenses because he concluded that Jacobs was living on the road.[1]

Background

Shalom Jacobs has been a truck driver since 2002. His trips were mainly long haul "over the road"--meaning he spent a significant number of weeks and months on the road and was paid by the mile. Some of this time he drove his own truck, but he sold that truck at the very end of 2006. (He did not report the sale on his return either for 2006 (when he sold it) or 2007 (when he got the money)). He then started to work for a "travel-trailer delivery" service and received roughly $7,000 of income from Megatrux Transportation in 2007 that he also did not report on his 2007 return. In 2008 he moved to a trucking "expedite" service, but in 2009 reverted to long haul. Long haul was definitely more lucrative for him: He received gross income upwards of $180,000 in 2009 reported on three 1099s (of which he reported only $135,000 on his 2009 return).

When he wasn't on the road, Jacobs considered his home to be in Cottage Grove, Minnesota, where he stayed in the guest room of his longtime friend and

---

[1] The case was tried as a small case under Internal Revenue Code section 7463(a) and (b). (All section citations are to the Code as currently in effect.) Trial as a small case means that this decision is not reviewable by any other court, and this opinion should not be cited as precedent.

fellow expat, Shimon Casper. Casper and Jacobs were both born in Israel and reared on kibbutzim. According to Jacobs, the Caspers' Cottage Grove home was an American-style kibbutz, where Casper, his wife and children, and Jacobs recreated the communal life of their homeland with everyone contributing everything they had and taking only what each needed. Or at least contributing quite a bit: Jacobs claimed he put in around $10,000 per year to the Cottage Grove "kibbutz", though he had no evidence to substantiate his claim.

## Discussion

Jacobs made several concessions both at trial and in his brief and these have left us with only a few issues to decide. We begin with Jacobs's argument that he should be allowed an additional amount for depreciation for 2009 for the truck he sold back in 2006. According to the notice of deficiency, the Commissioner actually *increased* the depreciation deduction for the 2007 tax year by more than $7,500. He disallowed, however, the amounts that Jacobs carried forward to 2008 and 2009.

A taxpayer generally has the burden of proving he is entitled to a deduction. Rule 142(a). This includes substantiating the amounts he claims by keeping records. See sec. 6001. Jacobs neither testified or gave us any other proof that he

was entitled to deduct additional depreciation for tax year 2009 on the truck that he sold back in 2006. We must rule in favor of the Commissioner on this one.

That leaves only the question of whether Jacobs could claim any *per diem* meal expenses for 2009. Section 162(a)(2) lets a taxpayer deduct reasonable and necessary travel expenses incurred while away from his home in the pursuit of a trade or business, but section 262(a) denies a deduction for any personal, living, or family expenses. This can make for a fuzzy line--people like Jacobs spend money on their personal expenses even when they are on the road making a living. Over the years, though, the rules have become clearer: A taxpayer has to have "adequate records" for all his claimed deductions, and he has to have extra evidence for some deductions (the ones listed in section 274(d)). But most importantly of all, he has to show that he was actually away from home when he incurred the expenses that he's trying to deduct.

The Code is a little peculiar in defining a person's "home." Normal people think of their home as the place where they spend their personal and family lives, but a "home" in tax law is usually where a taxpayer has his principal place of employment. Tax law defines a home as the permanent residence at which a taxpayer incurs substantial continuing living expenses only if he doesn't have a principal place of employment. Barone v. Commissioner, 85 T.C. 462, 465

(1985), aff'd without published opinion, 807 F.2d 177 (9th Cir. 1986). But what if a taxpayer is constantly on the move? Cases decided over many decades give us the answer--a taxpayer who's constantly in motion is a "tax turtle"--that is, someone with no fixed residence who carries his "home" with him. See, e.g., Henderson v. Commissioner, 143 F.3d 497, 501 (9th Cir. 1998), aff'g T.C. Memo. 1995-559; Deamer v. Commissioner, 752 F.2d 337, 339 (8th Cir. 1985), aff'g T.C. Memo. 1984-63; Johnson v. Commissioner, 115 T.C. 210, 221 (2000). Such a taxpayer is not entitled to business deductions for traveling expenses under section 162. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). The burden of proof is on the taxpayer if he disagrees with the Commissioner, Welch v. Helvering, 290 U.S. 111 (1933), and that is a high hurdle for a tax turtle to clear.

But was Jacobs a tax turtle? He claims his residence was in Cottage Grove, Minnesota, on a kibbutz with the Caspers and that his expenses are for when he was on the road away from them. The Commissioner argues that Jacobs didn't reside in Cottage Grove, but was either living on the road without a permanent residence or in California during 2007 and 2009 when he was between jobs. Old cases tell us to look for several factors:

> [T]he ultimate allowance or disallowance of a deduction is a function of the court's assessment of the reason for a taxpayer's maintenance of two homes. If the reason is perceived to be

personal, the taxpayer's home will generally be held to be his place of employment rather than his residence and the deduction will be denied. * * * If the reason is felt to be business exigencies, the person's home will usually be held to be his residence and the deduction will be allowed. * * *

Hantzis v. Commissioner, 638 F.2d 248, 253 (1st Cir. 1981) (disallowing deduction for Boston law student with a summer job in New York), rev'g T.C. Memo. 1979-299; Minick v. Commissioner, T.C. Memo. 2010-12 (applying Hantzis factors); Farran v. Commissioner, T.C. Memo. 2007-151 (applying Hantzis factors). And the IRS has an old revenue ruling that helps. Revenue Ruling 73-529, 1973-2 C.B. 37, deals specifically with taxpayers who live on the road. It lists three extra factors to help decide whether a taxpayer is an itinerant: (i) the business connection to the locale of the claimed home; (ii) the duplicative nature of the taxpayer's living expenses while traveling and at the claimed home; and (iii) personal attachments to the claimed home. Rev. Rul. 73-529, 1973-2 C.B. 37. So although the situation in Hantzis involved a law student who had two homes, the same factors apply here even if we are just dealing with the single Cottage Grove "kibbutz."

The cases and the revenue ruling thus tell us what questions to ask:

- Did Jacobs's trucking business give him some reason to live in Cottage Grove?

●     Was Jacobs ringing up double expenses–paying the ordinary expenses of keeping a home in Cottage Grove while also paying the same kind of expenses while on the road?

●     What kind of personal attachment did he have to the Cottage Grove home?

We'll take them in reverse order. Jacobs's records for 2009 indicate that he spent more time in California, and Rancho Cucamonga in particular, than he did in Cottage Grove. We also take issue with Jacobs's characterization of the Caspers' "home" as a "kibbutz." A house in the suburbs occupied by one family with a friend who stops by once in a while is by no measure "a communal farm or settlement." Jacobs provided no documentation or testimony that assets of the "kibbutz members" were communal. And we also find that Jacobs provided no documentation or proof of the payments he claimed to make to Casper as a contribution to the household. We found it especially telling that Casper, in his testimony, said that Jacobs occupied the "guest room"--the same room other visitors used when they visited.

Regarding the second factor, we have already found that Jacobs lacked evidence to show he financially contributed to the Casper home--let alone that these expenses duplicated those that he incurred on the road.

So the only issue left for us to discuss is whether Jacobs had a business reason for living there. We can't see any. If Jacobs used Casper's address for mail, voting, or other incidentals as he claimed (but provided no evidence of), we find it was for his convenience and affection for the Caspers, not for any business reason. We find instead that Jacobs is an itinerant worker--a tax turtle--whose tax home followed him on the road. See Henderson, 143 F.3d at 500 (taxpayer home during "idle time" but worked most nights touring with Disney On Ice).

There's one more issue. The Commissioner wants to penalize Jacobs under section 6662 for being negligent in preparing his tax return or for substantially understating his tax bill. Negligence means a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). This includes a taxpayer's failure to keep adequate books and records or to properly substantiate an item. Sec. 1.6662-3(b)(1), Proced. & Admin. Regs. A substantial understatement is defined as an understatement of tax exceeding the greater of 10% of the correct liability or $5,000. Sec. 6662(d)(1).

We'll go year by year. For 2007 Jacobs failed to report income from one of his two payors. His original return showed no federal income tax paid and none owing. While Jacobs blames his 2007 tax preparer for failing to report $59,000

from the sale of the truck, he didn't provide the preparer with any information about the sale.

For 2009 Jacobs failed to report over $40,000 of income. Jacobs showed tax owed on his return of $446--leading to a deficiency of more than $10,000. This exceeds $5,000, which makes it a substantial understatement of tax. Not only that, but Jacobs did not take the time to properly review his tax returns and ask questions of his tax preparers.[2] This also makes him negligent.

Taxpayers in similar situations can avoid the penalty if they can show that they relied on the advice of a professional tax adviser. Sec. 1.6664-4(b), Income Tax Regs. Even if we assume Jacobs received "advice," the caselaw lists three factors we need to look at to decide whether his reliance on it was reasonable. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

- Was the adviser a competent professional who had sufficient expertise to justify reliance?

- Did the taxpayer provide necessary and accurate information to the adviser?

- Did the taxpayer actually rely in good faith on the adviser's judgment?

---

[2] We also point out that he made no estimated tax payments for 2006, 2007, 2008, or 2009.

Jacobs claims he relied on qualified licensed professional tax preparers. As proof, he provided printouts of the advertising material of the preparers he chose. He argued that each type of truck driving (of which we have learned there are several) requires a different type of tax preparer--but he provided no evidence for this theory. But our biggest issue is that Jacobs could not possibly have relied on advice from a tax preparer to whom he did not give the necessary information. He did not report all of the income from the Forms 1099-MISC that he received. Not reporting income for which one has received a Form 1099 is a special sign of negligence, sec. 1.6662-3(b)(1)(i), Income Tax Regs., and it might not get a taxpayer off the hook for a penalty even if he gives the 1099 to his preparer, see Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662-63 (1987) (reliance on preparer with complete information not reasonable cause where cursory review would have revealed errors); Magill v. Commissioner, 70 T.C. 465, 479-80 (1978) (taxpayer still has duty to read return to make sure all income included even if all data given to tax preparer), aff'd, 651 F.2d 1233 (6th Cir. 1981). We can't even find that Jacobs did that.

But at least Jacobs used a licensed preparer for his 2007 return. For his 2009 return he used one Frank Katz, an interior designer who became a truck driver and then an unlicensed tax preparer. Katz's website material has not been

updated in nearly 15 years.  It was unreasonable for Jacobs to rely on an unlicensed tax preparer whose own website shows no training for at least nine years.  We do not find Katz to be a "competent professional" and find that Jacobs could not reasonably have thought him to be one.

<u>Decision will be entered for</u>

<u>respondent</u>.